UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

LISA SPIEGEL-GRIM, on behalf of herself and all others similarly situated,

      Plaintiff,

  v.

CVS PHARMACY, INC.,

      Defendant.

------------------------------------------------------------------X

Index No. 24-cv-4860

**CLASS ACTION COMPLAINT**

Plaintiff, Lisa Spiegel-Grim, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against defendant CVS Pharmacy, Inc. ("Defendant"), as follows:

## NATURE OF THE ACTION

1. This action seeks to redress Defendant's false and misleading marketing campaign for its *Gold Emblem Yogurt Pretzel Twists* product line which suggests that the product contains yogurt, when it does not, and is healthy for consumers to eat, when it is not. Rather, Defendant's product is covered in a candy-like coating designed to provide the illusion of health while delivering the harms of an ultra-processed food.

2. Defendant's product packaging prominently features images of pretzels covered in a white coating next to the words "Yogurt Pretzel Twists." The back of the package states that "Gold Emblem Yogurt Pretzel Twists are a crunchy pretzels covered by a deliciously sweet yogurt shell." The front and back of the packaging are shown here:



3.      The product name "*Yogurt Pretzel Twists*" and the packaging description of a "yogurt shell" would be interpreted by any reasonable consumer as guarantees that the product is made with yogurt and is healthy to consume.  Yogurt is widely understood to be a healthy and nutritious product containing calcium, protein, phosphorus and B Vitamins, as well as bacteria that is beneficial to the gut biome.[1]

4.      The ingredient list on the packaging represent that the products contain what Defendant misleadingly calls a "yogurt coating."  The "yogurt coating" is made from sugar, hydrogenated palm kernel oil, milk blend (milk, nonfat milk, lactose), yogurt blend (nonfat milk, whey, lactic acid), nonfat milk, yogurt powder (cultured whey, nonfat milk), soy lecithin,

---

[1]  Harvard T.H. Chan School of Public Health, *Yogurt*. (Updated November 2019). The Nutrition Source, https://www.hsph.harvard.edu/nutritionsource/food-features/yogurt/ (last visited July 12, 2024)

2

artificial sour cream flavor, artificial color, lactic acid, and artificial vanilla flavor.  The ingredient list is copied below:

> INGREDIENTS: YOGURT COATING (SUGAR [SUGAR, CORNSTARCH], HYDROGENATED PALM KERNEL OIL, SUGAR, MILK BLEND [MILK, NONFAT MILK, LACTOSE], YOGURT BLEND [NONFAT MILK, WHEY, LACTIC ACID], NONFAT MILK, YOGURT POWDER [CULTURED WHEY, NONFAT MILK], SOY LECITHIN [AN EMULSIFIER], ARTIFICIAL SOUR CREAM FLAVOR, ARTIFICIAL COLOR, LACTIC ACID, ARTIFICIAL VANILLA FLAVOR), PRETZELS (ENRICHED FLOUR [WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], CONTAINS 2% OR LESS OF CORN SYRUP, SALT, CORN OIL, CANOLA OIL, SOYBEAN OIL, MALT, SODIUM BICARBONATE, YEAST).
> **ALLERGY INFORMATION:**
> CONTAINS MILK, SOY, WHEAT.

5. The "yogurt coating" contains several ingredients known to be unhealthy for people to consume in their ultra-processed form, including hydrogenated palm kernel oil.

6. Notably, the ingredient list does not include active bacterial cultures, a necessary component of yogurt.

7. Essentially, in a visual and semantic sleight of hand, Defendant substitutes an unhealthy ultra-processed candy-like coating for a healthy product (yogurt).

8. Defendant's website markets its Gold Emblem products as being "healthy," reassuring consumers that its "selection includes everything from pretzels, applesauce and chocolate-covered nuts and seeds to cereals and candies, ensuring a variety of savory and sweet healthy snacks."

9. More evidence is emerging every day that diets rich in ultra-processed foods are associated with "increased risks for premature death, cardiovascular disease, mental health disorders, diabetes, obesity, and sleep problems."[2]

---

[2] Heidi Goodman, Ex. Ed. Harvard Health Letter, *More Evidence That Ultra-processed Foods Harm Health*. June 1, 2024, Harvard Health Publishing.

3

10. Consumers, like Plaintiff, who purchased Defendant's *Yogurt Pretzel Twists* have been deceived by Defendant's false and misleading claims that this product contain yogurt, when it does not, and is healthy to consume, when it is not, and are entitled to redress through this action for Defendant's deceptive conduct.

## THE PARTIES

11. Plaintiff Lisa Spiegel-Grim is an individual who resides in Rego Park, Queens, New York.

12. Defendant CVS Pharmacy, Inc. is a Rhode Island corporation with its principal place of business in Rhode Island.

13. Defendant markets, sells, and distributes various food products, including *Gold Emblem Yogurt Pretzel Twists.*

14. Defendant markets, sells, and distributes *Gold Emblem Yogurt Pretzel Twists* in New York and throughout the United States, including, but not limited to, through its retail locations and website.

15. Defendant is responsible for the marketing, advertising, labeling, and packaging of *Gold Emblem Yogurt Pretzel Twists*.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

---

https://www.health.harvard.edu/nutrition/more-evidence-that-ultra-processed-foods-harm-health (last visited July 12, 2024).

17. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

18. This Court may exercise jurisdiction over the Defendant because it has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## FACTUAL BACKGROUND

### I. Defendant Markets *Gold Emblem Yogurt Pretzel Twists* as Healthy and as Containing Yogurt, When, in Fact, They Do Not Contain Yogurt and Instead Contain Unhealthy Ultra-processed Ingredients

20. Consumers increasingly are becoming aware of the benefits of living a healthy lifestyle, including eating nutritious foods.

21. Yogurt, which has been made and consumed by humans for thousands of years, is made when heated milk is combined with specific types of bacteria resulting in a thick, creamy product.[3] While yogurt is a rich source of calcium and protein, it also contains live bacteria which, studies suggest, may be beneficial to the gut biome.[4] Regular consumption of yogurt is

---

[3] Harvard T.H. Chan School of Public Health. *Yogurt* (last reviewed November 2019), https://www.hsph.harvard.edu/nutritionsource/food-features/yogurt/ (last visited July 12, 2024)(citing the studies linked below in footnotes 4 through 6).

[4] D.J. Lisko et al., *Effects of Dietary Yogurt on the Healthy Human Gastrointestinal (GI) Microbiome*. 2017 Microorganisms. 5(1), https://www.mdpi.com/2076-2607/5/1/6

5

associated with reduced risk of obesity and chronic diseases,[5] and may protect against heart disease[6] and Type II diabetes.[7] These health benefits of yogurt, as well as its nutritional value, are widely known to consumers and drive consumer decision-making. Indeed, "[o]ver the last 50 years, yogurt has shifted from being perceived as a specialty health food item to being a beloved mainstream staple in America."[8]

22. Regrettably, Defendant can lay no legitimate claim as to these properties benefiting its consumers, as *Gold Emblem Yogurt Pretzel Twists* do not contain yogurt at all.

23. Rather, the Product contains what Defendant misleadingly describes as a "yogurt coating," which is, essentially, a vanilla-flavored candy-like coating whose primary ingredient is sugar.[9] While a "yogurt blend" and "yogurt powder" consisting of whey, cultured whey and nonfat milk appear as secondary ingredients of the "yogurt coating" (after hydrogenated palm

---

[5] Dariush Mozaffrian, et al. *Changes in Diet and Lifestyle and Long-Term Weight Gain in Women and Men.* 2011 N Engl J Med. 364:2392-404, https://www.nejm.org/doi/10.1056/NEJMoa1014296?url_ver=Z39.88-2003&rfr_id=ori:rid:crossref.org&rfr_dat=cr_pub%20%200www.ncbi.nlm.nih.gov

[6] Kerry L. Ivey et al., *Association Between Yogurt, Milk, and Cheese Consumption and Common Carotid Artery Intima-media Thickness and Cardiovascular Disease Risk Factors in Elderly Women.* 2011 Am J Clin Nutr. 94(1):234-9, https://www.sciencedirect.com/science/article/pii/S0002916523023353?via%3Dihub

[7] Karen Margolis et al. *A Diet High in Low-fat Dairy Products Lowers Diabetes Risk in Postmenopausal Women.* 2011 J Nutr. 141(11):1969-74, https://www.sciencedirect.com/science/article/pii/S0022316622031030?via%3Dihub

[8] WebMD, *Health Benefits of Yogurt,* (February 14, 2023), https://www.webmd.com/diet/health-benefits-yogurt (last visited July 12, 2024).

[9] Commercially available vanilla-flavored candy coatings contain similar ingredients. For example, Great Value Vanilla Flavored Candy Coating contains sugar, palm kernel oil, palm oil, nonfat dry milk, soy lecithin (an emulsifier), whole milk, natural flavors and vanilla extract. https://www.walmart.com/ip/Great-Value-Vanilla-Flavored-Candy-Coating-16-oz/967028108

kernel oil and a milk blend) they are clearly present in such minute quantities as to have minimal (if any) nutritional value.[10]

24. Moreover, completely absent from the ingredients of the "yogurt coating" are any live active yogurt cultures such as *L. Bulgaricus, S. Thermophilus*, *L. Acidophilus*, *Bifidus*, or *L. Casei*. The addition of such bacterial cultures are a necessary component of yogurt, according to the Standards of Identity (SOI) established under the Federal Food, Drug & Cosmetic Act ("FDCA") which are intended to "promote honesty and fair dealing" and "to ensure that the characteristics, ingredients and production processes of specific foods are consistent with what consumers expect."[11]

25. According to the applicable SOI (last updated in 2021), "yogurt" is defined as:

> **the food produced by culturing one or more of the basic dairy ingredients** specified in paragraph (b) of this section and any of the optional dairy ingredients specified in paragraph (c) of this section **with a characterizing bacterial culture that contains the lactic acid-producing bacteria, Lactobacillus delbrueckii subsp. Bulgaricus and Streptococcus thermophilus**. The ingredients specified in paragraphs (b) and (c) of this section may be homogenized and must be pasteurized or ultra-pasteurized before the addition of the characterizing bacterial culture.

21 CFR § 131.200(a)(emphasis added). While additional flavors, sweeteners, and vitamins, among other substances, may be added to the product without losing its identity as "yogurt," the FDCA makes clear that the inclusion of the "characterizing bacterial culture" is essential to being able to market a product as "yogurt." If the dairy ingredients are treated after culturing to remove microorganisms, the product label must contain the phrase "**does not contain live and

---

[10] https://www.medicalnewstoday.com/articles/295714 (last visited on July 12, 2024).

[11] FDA, *Standards of Identity For Food* (updated March 14, 2024), https://www.fda.gov/food/food-labeling-nutrition/standards-identity-food (last visited July 12, 2024).

7

**active cultures."** 21 CFR § 131.200(f)(ii) (emphasis added).

26. The product packaging for *Gold Emblem Yogurt Pretzel Twists*, despite its prominent claim to contain yogurt and the complete absence of live cultures from its ingredient list, fails to state on the front panel that it "does not contain live and active cultures."

27. Simply put, the product label for *Gold Emblem Yogurt Pretzel Twists* is misleading because it suggests to a reasonable consumer that the product contains healthy and nutritious "yogurt" (which, by definition, includes live bacterial cultures unless the label prominently states otherwise) when it does not.

28. Instead, the product is covered in a vanilla-flavored candy-like coating that consists primarily of sugar and other unhealthy ultra-processed ingredients such as hydrogenated palm kernel oil which have been associated with cardiovascular disease and obesity.[12]

29. The serving size of the product – which is "5 pieces" according to a tiny white letters on the front of the package and the nutritional information on the back – illuminates the health perils of the product. Five pretzels coated with the candy-like coating contain 150 calories, 7 grams of saturated fat (35% of the Daily Value), and 12 grams of sugar. In contrast, a serving of Gold Emblem Mini Pretzel twists contain 120 calories, no saturated fat and less than 1 grams of sugar.

30. A large review of studies on ultra-processed foods recently found that exposure to such foods was associated with thirty-two adverse health parameters "spanning mortality, cancer, and mental, respiratory, cardiovascular, gastrointestinal and metabolic health outcomes."[13]

---

[12] Euridice Martinez Steele et al., *The Burden of Excessive Saturated Fatty Acid Intake Attributed to Ultra-processed Food Consumption: A Study Conducted with Nationally Representative Cross-sectional Studies from Eight Countries*. 2021 J Nutr Sci. 10:e43. doi:10.1017/jns.2021.30, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8190718/

[13] Melissa Lane et al. *Ultra-processed Food Exposure and Adverse Health Outcomes: Umbrella*

Published in 2024, such studies "are valuable because they look at large groups of people – the 2024 review included results from nearly 10 million — over the many years it can take for chronic health conditions to develop."[14]

31. Consumers are increasingly aware of the dangers of ultra-processed foods and are willing to pay a higher price for products that are considered healthier and more natural. Businesses, including Defendant, prominently promote their products as containing yogurt, when they do not, in order to capitalize on consumers' belief in the health and nutritional benefits of yogurt.

32. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

## II. Plaintiff Purchased Relying on Defendant's Representations that the Products Were Healthy and Contained Yogurt

26. Over the last two years, Plaintiff has purchased *Gold Emblem Yogurt Pretzel Twists* for her and her grandson at the CVS store located in Kew Gardens. Plaintiff last purchased *Gold Emblem Yogurt Pretzel Twists* in or about January, 2024.

27. Prior to purchasing *Gold Emblem Yogurt Pretzel Twists*, Plaintiff saw the product's packaging and, in particular, the representation that the pretzels are covered in yogurt.

28. Plaintiff purchased *Gold Emblem Yogurt Pretzel Twists* reasonably believing that Defendant's Product contains yogurt.

---

*Review of Epidemiological Meta-analyses*. 2024 BMJ 384:e077310, https://doi.org/10.1136/bmj-2023-077310

[14] Alice Callahan. *How Bad Are Ultraprocessed Foods, Really?* The New York Times. May 6, 2024, https://www.nytimes.com/2024/05/06/well/eat/ultraprocessed-foods-harmful-health.html (last visited May 21, 2024)

29. Plaintiff is aware of the health benefits of yogurt and reasonably believed she was purchasing a product that was healthier snack for her and her grandson to consume because it contained yogurt.

30. Had Plaintiff known that Defendant's *Gold Emblem Yogurt Pretzel Twists* do not contain yogurt, she would not have purchased Defendant's products or, at the very least, would not have paid a price premium for Defendant's *Gold Emblem Yogurt Pretzel Twists*.

## CLASS DEFINITION AND ALLEGATIONS

31. Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to CPLR Section 901, and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased *Gold Emblem Yogurt Pretzel Twists* in the State of New York (whether online or in-person) manufactured, marketed, distributed, and/or sold by Defendant which Defendant warranted as containing yogurt (the "Class Product"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers, and their immediate family members and associated court staff assigned to this case, and those who purchased Class Product for resale.

32. Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

33. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

10

34. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant labeled, packaged, advertised, marketed, and/or sold the Class Product with claims that it contained "yogurt."

- Whether Defendant's labeling, packaging, advertising, marketing, and/or selling of the Class Product with claims that it contained "yogurt" was and/or is false, fraudulent, deceptive, and/or misleading.

35. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's misrepresentations. Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

36. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased a Class Product, and she was harmed by Defendant's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased Class Product. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

37. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by

individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

38. Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

## As and for a First Cause of Action
**(Violation of New York General Business Law Section 349)**

39. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

40. New York General Business Law Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York."

41. By labeling, packaging, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members with false and misleading claims that the

Class Product contained "yogurt" as set forth above, Defendant engaged in, and continues to engage in, deceptive acts and practices.

42. In taking these actions, Defendant failed to disclose material information about their products, which omissions were misleading in a material respect to consumers and resulted in the purchase of Defendant's products.

43. Defendant has deceptively labeled, packaged, advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

44. Defendant's conduct was consumer oriented.

45. Defendant engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

46. Defendant's misrepresentations were misleading in a material respect because the Class Product does not contain "yogurt."

47. Defendant knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing Class Product.

48. Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for a product that is not what Defendant represent it to be.

49. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and the Class for the actual damages that they have suffered

as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

50. Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly. Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

## As and for a Second Cause of Action
**(Violation of New York General Business Law Section 350)**

51. Plaintiff realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

52. Defendant's labeling, packaging, marketing, and advertising of the Class Product is "misleading in a material respect," as it fails to disclose to consumers material information in Defendant's sole possession and, thus, is "false advertising."

53. No rational individual would purchase the Class Product at the prices at which it is sold with full knowledge that the Class Product does not contain "yogurt."

54. Defendant's labeling, packaging, marketing, and advertising of the Class Product as containing "yogurt" were consumer oriented.

55. Defendant's labeling, packaging, advertisements, and marketing of the Class Product as containing "yogurt" was misleading in a material respect, which induced plaintiff and class members to purchase the product.

56. By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been

substantially injured by paying for a product that has diminished, lesser, or no value due to its false claims that the Class Product contains "yogurt."

57.     Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.     Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.     On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

C.     On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.     On Plaintiff's First and Second Causes of Action, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.     Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:   July 12, 2024
         White Plains, New York

                             **DENLEA & CARTON LLP**

                        By:   */s/ Catherine Friesen*
                            James R. Denlea
                            Jeffrey I. Carton
                            Catherine H. Friesen
                            2 Westchester Park Drive, Suite 410
                            White Plains, New York 10604
                            Tel.: (914) 331-0100
                            Fax: (914) 331-0105
                            jdenlea@denleacarton.com
                            jcarton@denleacarton.com
                            cfriesen@denleacarton.com

                            *Attorneys for Plaintiff*